**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-00403-WJM-BNB

JAY CLEARY,

      Plaintiff,

v.

BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN (PLAN 503),
UNITED LAUNCH ALLIANCE WELFARE BENEFITS PLAN FOR HERITAGE BOEING EMPLOYEES, and
UNITED LAUNCH ALLIANCE ADMINISTRATIVE COMMITTEE,

      Defendants.

---

**ORDER AFFIRMING DENIAL OF ERISA BENEFITS,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
AND DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE**

---

Plaintiff Jay Cleary ("Plaintiff") brings this case against Defendants Boeing Company Employee Health and Welfare Benefit Plan (Plan 503) ("Boeing Plan"), United Launch Alliance Welfare Benefits Plan for Heritage Boeing Employees ("ULA Plan"), and United Launch Alliance Administrative Committee ("ULA Committee") (collectively "Defendants").  This matter is before the Court on the parties' joint Motion for Determination (ECF No. 135), and the Motion for Summary Judgment (ECF No. 118) and Motion to Strike (ECF No. 133) filed by Defendants ULA Plan and ULA Committee (jointly the "ULA Defendants").  For the reasons discussed below, the denial

of benefits is AFFIRMED, the Motion for Summary Judgment is GRANTED, and the

Motion to Strike is DENIED AS MOOT.

## I.  BACKGROUND

Unless otherwise noted, the following facts are undisputed.  This case arises

under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1001-1461, and concerns Defendants' denial of short-term and long-term disability

benefits to Plaintiff and related claims.

Plaintiff was an employee of the Boeing Company from July 12, 1998 until

November 30, 2006.  (ECF No. 118 Ex. A.)  While an employee of Boeing, Plaintiff was

a participant in and beneficiary of the Boeing Plan, governed by ERISA, which included

short-term disability ("STD") and long-term disability ("LTD") benefits coverage.  (*Id.*)

On December 1, 2006, due to Boeing's pursuit of a new joint venture business,

Plaintiff's position was reallocated to the joint venture, and Plaintiff became an

employee of United Launch Alliance, LLC ("ULA").  (*Id.* at Ex. B.)

During the first two years of ULA's existence, the "transition period" from

December 1, 2006, to December 1, 2008, ULA provided its former Boeing

employees—including Plaintiff—with welfare benefits coverage under the ULA Plan, an

ERISA-governed benefit plan.  (*Id.* at Ex. C.)  Plaintiff was informed and understood

that during the transition period, his benefits would stay the same and would be

managed by Boeing.  (*Id.* at Ex. B pp. 22-23.)  Plaintiff understood the Boeing Plan and

the ULA Plan to be functionally a single benefits plan.  (ECF No. 79 (Am. Compl.) ¶ 4.)

During the transition period, the insurance carrier and Claims Administrator for disability benefits under both the Boeing Plan and the ULA Plan was Aetna Inc.  (*Id.*)  Under the terms of both Plans, Aetna was granted "discretionary authority" to:

> determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy.  Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.

(ECF No. 57 ("Record" or "R.") at AETNA000037, 214.)  Although Aetna made disability determinations for both STD and LTD benefits, the STD benefit payments were made directly by Boeing, while LTD benefits were paid by Aetna.  (ECF No. 130 at 15; R. at AETNA000107, AETNA000247.)  The ULA Committee was the named Plan Administrator for the ULA Plan.  (Am. Compl. ¶ 3.)

On or about December 7, 2007, Plaintiff went on medical leave from ULA and applied for disability benefits through Aetna.  (Am. Compl. ¶ 27.)  Plaintiff's alleged disability was caused by an injury he suffered in 1977 while he was serving in the military, the symptoms of which had worsened over the intervening decades.  (*Id.*)  Aetna denied Plaintiff's request for benefits in a letter dated December 18, 2007, which explained that Plaintiff had failed to provide sufficient clinical information to allow for a determination of his claim of disability.  (R. at AETNA000267.)  The letter made reference to a previous notice dated December 14, 2007, which requested the "missing clinical information."  (*Id.*)  Although the letter did not specify the reason such clinical information was necessary, or the provision of the plan leading to the denial, the letter did offer to provide such explanations upon request.  (R. at AETNA000268.)  The

December 18, 2007 letter also indicated that if Plaintiff did not agree with the final determination, he had the right to bring a civil action under ERISA.[1]  (*Id.*)  Finally, the letter stated that an Attending Physician Statement was enclosed, and requested that Plaintiff have his physician complete it and send it to Aetna.  (*Id.*)

Plaintiff made a second claim for STD benefits on October 30, 2008.  (ECF No. 119 at 8.)  On November 4 and 6, 2008, Aetna received medical records sent via facsimile from the Veterans Administration ("VA") Medical Center where Plaintiff was treated.  (R. at AETNA000269-86.)  Plaintiff's claim was denied by letter dated November 10, 2008, which was nearly identical to the first denial letter, again citing missing clinical information that had been requested four days prior, and again requesting a completed Attending Physician Statement.  (R. at AETNA000323-24.)

On the evening of November 10, 2008, Aetna received another facsimile of medical records from the VA.  (R. at AETNA000287-324.)  On December 9, 2008, Aetna received an Attending Physician Statement form completed by Nurse Practitioner Mary B. Walton, FNP-C.  (R. at AETNA000325-30.)  After receipt of this information, Plaintiff was informed by letter dated December 12, 2008 that his application for STD benefits was pending, and an orthopedic peer review had been requested.  (R. at AETNA000331.)

---

[1] This sentence, or a substantive equivalent, was included in every one of the denial letters Aetna sent Plaintiff.  (R. at AETNA000268, 324, 335, 355, 379.)

In a letter dated January 7, 2009, Aetna informed Plaintiff that despite its awareness of Plaintiff's medical diagnoses, his request for STD benefits was denied "[d]ue to insufficient clinical information supporting [his] claim for disability," and his request for LTD benefits was denied because the 26-week waiting period for LTD benefits had not been completed.  (R. at AETNA000333.)

In the January 7, 2009 denial letter, Aetna reviewed the definition of "totally disabled" as set forth in the Boeing Plan, explained that a Board Certified Orthopedic Surgeon had reviewed Plaintiff's claim, and determined that based upon the records Plaintiff had submitted, his condition was not severe enough to preclude the physical requirements of his job.  (R. at AETNA000334.)  Aetna also explained that, although Plaintiff's impairment may prevent him from performing his job, "the documentation is lacking and there is insufficient observable impairment in functioning (*e.g.* test results showing significant loss of functionality or deficits in performing activities of daily living, etc.) to demonstrate a severity of impairment" which would support a finding of disability.  (*Id.*)  Finally, the letter stated that Plaintiff may file a written request for review of the denial, and if such review was requested, indicated that Plaintiff should submit "clinical findings and test results that indicate that your condition is of the severity that would impair you from performing your occupation."  (R. at AETNA000335.)

After receiving the January 7, 2009 letter, Plaintiff submitted to Aetna a set of additional documents, including a note from his Physical Therapist, a description of his job duties and his home physical therapy treatments, and a "Return to Work" form

describing Plaintiff's limitations signed by Nurse Walton.  (R. at AETNA000337-349.)

Plaintiff then received another denial letter dated January 30, 2009 that was identical to

the letter dated January 7, 2009, and did not acknowledge the documents Plaintiff had

recently submitted.  (*See* R. at AETNA000350-53.)

On February 2, 2009, Aetna sent Plaintiff a new letter which noted the additional

documents Aetna had received, but stated that:

> While your attending provider has confirmed you have vertebral
> compression fractures and has indicated restrictions[,] and limitations are
> given with a possible duration of disability to 2010, **there are no test**
> **results or physical exam findings that support a significant loss of**
> **functionality or deficits in performing your activities of daily living**.
> Therefore, the denial of disability benefits is maintained on the review of
> the additional information provided.

(R. at AETNA000355 (emphasis added).)  Plaintiff's LTD benefits request was also

denied, again due to the 26-week waiting period.  (R. at AETNA000354.)  The letter

went on to state Aetna's willingness to review additional information, again described

the type of additional information that would be helpful, and explained the process for

requesting review of the decision.  (*Id.*)

Plaintiff sent an appeal letter dated March 17, 2009 to "Boeing (ULA) Appeals

Unit" at the address indicated in Aetna's denial letters, which reiterated the information

already submitted as to why he believed he was entitled to benefits, and included a

request for "any copies or documents relevant to [his] request for appeal."  (R. at

AETNA000357.)  Attached to Plaintiff's letter of March 17, 2009 were copies of many of

the same documents that Plaintiff had already submitted, such as the Attending

Physician Statement and "Return to Work" form signed by Nurse Walton and the letter from Plaintiff's physical therapist, as well as a new letter from Plaintiff's friend and caretaker.  (R. at AETNA000360-67.)

Aetna denied Plaintiff's appeal in a letter dated April 13, 2009.  (R. at AETNA000377.)  After noting the definition of disability under the Plan and itemizing the documentation Plaintiff included with his appeal letter, Aetna noted that a physician consultant specializing in orthopedic surgery had reviewed Plaintiff's file and had spoken to Nurse Walton.  (R. at AETNA000378.)  The letter indicated that Aetna agreed with the physician consultant's opinion that "there were insufficient, updated quantitative physical examination findings and diagnostics to correlate with your subjective complaints to support a functional impairment" meeting the disability definition, and "there was insufficient medical evidence" to support a finding of disability.  (R. at AETNA000378-79.)  Plaintiff's LTD benefits were again denied for failure to complete the 26-week waiting period.  (R. at AETNA000379.)

On July 7, 2009, Plaintiff's attorney sent another letter to Aetna appealing the denial of Plaintiff's benefits, requested a complete copy of Plaintiff's claim file, including the Summary Plan Description, and requested that "[i]f Aetna is not the Plan Administrator, please forward this request to the Plan Administrator."  (R. at AETNA000381-87.)  In addition to copies of the documents already submitted, Plaintiff's July 7, 2009 letter included the results of an MRI conducted on May 5, 2009, and an "O*Net Custom Report for Industrial Health and Safety Engineers" describing

the tasks and activities of the position.  (*Id.*; R. at AETNA000401-15.)  Finally, the letter

contested Aetna's conclusions regarding the medical evidence, and made several legal

arguments contesting the denial of benefits, including the assertion that Aetna was

biased against Plaintiff's claim and that its denials of benefits were arbitrary and

capricious.[2]  (R. at AETNA000387-400.)  Aetna mailed a copy of Plaintiff's claim file to

Plaintiff's attorney on August 18, 2009.  (R. at AETNA000594.)

On November 29, 2010, Plaintiff sent a letter via facsimile addressed to the

"Boeing Employee Benefits Plan Commission," requesting copies of the STD and LTD

plans from 2007-2008.  (ECF No. 118 Ex. K.)  After receiving Plaintiff's November 29,

2010 letter, Boeing forwarded it to ULA and requested that ULA handle the request

because Plaintiff was ULA's employee.  (*Id.* at Ex. L.)  ULA responded to Plaintiff's

request by letter dated December 17, 2010, and attached a copy of the 2006 Summary

Plan Description[3], which was in effect in 2007 and 2008.  (*Id.* at Ex. M.)  On December

20, 2010, Boeing sent a letter to Plaintiff to clarify that Plaintiff had sent his November

29, 2010 request for documents to the wrong entity, but that Boeing had forwarded his

request to ULA and provided a phone number for a contact person at ULA.  (*Id.* at Ex.

N.)

---

[2]  The arguments in Plaintiff's July 7, 2009 letter are identical—and nearly duplicated verbatim—to those made in Plaintiff's Opening Brief.  (*See* ECF No. 119.)

[3]  Although the ULA Defendants assert that the Summary Plan Description they sent to Plaintiff was for the ULA Plan that applied to Plaintiff (ECF No. 118 at 6), Plaintiff asserts that the Summary Plan Description he received was for the Boeing Plan and it did not apply to him. (Am. Compl. ¶ 43.)

On February 17, 2011, having exhausted his administrative remedies, Plaintiff filed a Complaint (ECF No. 1) against the Boeing Plan and the Boeing Employee Benefit Plans Committee[4], subsequently filing an Amended Complaint on March 16, 2012 which added as Defendants the ULA Plan and the ULA Committee.  (Am. Compl. ¶¶ 2-6.)  Plaintiff's Amended Complaint asserted four claims, seeking: (1) a reversal of the denial of benefits; (2) penalties under 29 USC § 1132(c)(1) for the ULA Committee's failure to provide copies of the latest Summary Plan Description; (3) reformation of the Plan contract; and (4) compensation for the ULA Defendants' breach of their fiduciary duty.  (*Id.* ¶¶ 47-74.)  In the course of discovery, Plaintiff subpoenaed documents from the ULA Committee regarding Plaintiffs' claim, including copies of the applicable Summary Plan Description and plan documents.  (ECF No. 118 Ex. P.)

Plaintiff filed his Opening Brief seeking a reversal of Aetna's denial of benefits on November 30, 2012.  (ECF No. 119.)  Defendant Boeing Plan filed its Response on January 4, 2013 (ECF No. 130), which was joined by the ULA Defendants later the same day (ECF No. 131).  Plaintiff filed a Reply on January 25, 2013.  (ECF No. 134.) The parties then filed their Joint Motion for Determination on January 31, 2013.  (ECF No. 135.)

On November 30, 2011, the same day that Plaintiff filed his Opening Brief, the ULA Defendants filed a Motion for Summary Judgment on Plaintiff's Claims Two, Three, and Four.  (ECF No. 118.)  After requesting and receiving a two-day extension on the deadline to respond due to technical difficulties (ECF Nos. 126, 127), Plaintiff

---

[4]  The Boeing Company Employee Benefit Plans Committee was later dismissed from the case, pursuant to a stipulation between the parties.  (ECF No. 70.)

filed his Response on the extended deadline, December 26, 2012.  (ECF No. 128.)

However, the exhibits in support of Plaintiff's Response were not filed until December

28, 2012.  (*See* ECF No. 129.)  The ULA Defendants replied on January 14, 2013 (ECF

No. 132), and the following day filed a Motion to Strike the exhibits to Plaintiff's

Response because they had been untimely filed.  (ECF No. 133.)  Plaintiff did not

respond to the ULA Defendants' Motion to Strike.

## II.   DENIAL OF BENEFITS: CLAIM ONE

Plaintiff's Opening Brief argues that Defendants unreasonably ignored the

medical evidence and violated ERISA in failing to properly evaluate Plaintiff's claim or

explain their denial of disability benefits, and Plaintiff requests a reversal of the denial

decision.  (ECF No. 119 at 1-3.)

### A.     Standard of Review

ERISA governs employee benefit plans, including disability benefit plans.  29

U.S.C. §§ 1101 *et seq.*  "When an individual covered by the plan makes a claim for

benefits, the administrator gathers evidence, including the evidentiary submissions of

the claimant, and determines under the plan's terms whether or not to grant benefits.  If

the administrator denies the claim, the claimant may bring suit to recover the benefits

due to him under the terms of his plan."  *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d

1303, 1308 (10th Cir. 2007) (citing 29 U.S.C. § 1132(a)(1)(B)) (internal quotation marks

and brackets omitted).  Federal courts have exclusive jurisdiction over such suits, as

ERISA preempts relevant state laws.  29 U.S.C. § 1144(a).

The Supreme Court has held that "a denial of benefits challenged under [the civil enforcement provision of ERISA, 29 U.S.C.] § 1132(a)(1)(B)[,] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court determines whether the denial of benefits was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000) ("arbitrary and capricious" standard should be applied to a plan administrator's actions).  Under the arbitrary and capricious standard, the administrator's decision need not be the only logical one or the best one; the decision will be upheld provided that it is "grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999).  "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness— even if on the low end." *Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

"[W]hen reviewing a plan administrator's decision to deny benefits, the court is to consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale was arbitrary and capricious."[5] *Spradley v. Owens-Illinois Hourly Emps. Welfare Benefit*

---

[5] In view of this Tenth Circuit authority confining review to the administrative record, the Court declines to entertain Plaintiff's"object[ion] to being required to argue this case in a brief on the administrative record."  (ECF No. 119 at 5.)

*Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (*quoting Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008)).  A decision is not arbitrary and capricious if it is supported by "substantial evidence", which is "evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker."  *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1993).  "Substantial evidence requires more than a scintilla but less than a preponderance."  *Id.*

In the instant case, the Plan explicitly grants Aetna the discretionary authority to determine eligibility for benefits and to construe the Plan's terms.  (R. at AETNA000037, 214).  Accordingly, *Firestone Tire* dictates that Defendants' denial of disability benefits be reviewed under an arbitrary and capricious standard.  489 U.S. at 115.

Nevertheless, Plaintiff contends that the Court should apply a *de novo* standard of review.  (ECF No. 119 at 4.)  The briefing contains three arguments for *de novo* review: (1) Defendants failed to assert in the Scheduling Order that the Plan gave Aetna decisionmaking discretion triggering "arbitrary and capricious" review, and therefore they waived the argument against *de novo* review; (2) Defendants violated ERISA notice requirements, which necessitates *de novo* review; and (3) a conflict of interest

exists, which requires the Court to apply a less deferential standard of review.[6]  (*Id.*; ECF No. 130 at 14-15.)

Plaintiff correctly states that the Scheduling Order included his assertion that *de novo* review applies.  (*See* ECF No. 93 at 10.)  Regardless, Plaintiff's bald assertions—even if memorialized in the Scheduling Order—do not dictate the appropriate standard of review where the law instructs otherwise.  The undisputed evidence in the Record indicates that the Plans at issue here assigned to Aetna the discretionary authority to make benefits eligibility decisions.  (*See* R. at AETNA000037, 214.)  Plaintiff does not contest that the Plans contain such language.

Instead, Plaintiff first claims that Defendants failed to raise such an argument in the Scheduling Order, and therefore waived their right to assert it.  (ECF No. 119 at 4 (citing *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) ("As the party arguing for the more deferential standard of review, it is [the defendant]'s burden to establish that

---

[6]  Although Plaintiff does not explicitly argue in his briefs that Defendants had a conflict of interest, he asserts that he "objects to the Magistrate [Judge]'s Order of November 15, 2012, denying Plaintiff's request for discovery as pla[i]n error because the 10th Circuit has held that Plaintiff[]s have a right to conduct discovery regarding conflicts of interest."  (ECF No. 119 at 5.) However, Plaintiff filed no timely objection to the Magistrate Judge's Order; instead, he included this statement in his Opening Brief, which was filed on November 30, 2012, and his objection was therefore untimely.  *See* Fed. R. Civ. P. 72(a).  Further, as this objection was included in Plaintiff's Opening Brief, it violated the Court's practice standards.  WJM Revised Practice Standard III.B. ("All requests for the Court to take any action, make any type of ruling, or provide any type of relief must be contained in a **separate**, written motion.") (emphasis in original).  Thus, the Court will not consider Plaintiff's objection regarding the Magistrate Judge's Order.  However, because Defendants discuss the conflicts issue in their Response, the Court reviews it herein.

this court should review its benefits decision at issue here under an arbitrary-and-capricious standard.").)

While the Court agrees that it is Defendants' burden to establish that the Plan assigned the necessary discretion to Aetna to trigger a deferential standard of review, Defendants met that burden in their Response by citing explicit, uncontradicted language in both the Boeing Plan and the ULA Plan.  (ECF No. 130 at 14-15.)  Such language shifts the standard of review to arbitrary and capricious.  *See Firestone Tire*, 489 U.S. at 115.

Plaintiff's second argument asserts that the Court must review his claims *de novo* because Defendants violated ERISA notice requirements.  (ECF No. 119 at 4.) Plaintiff again cites *LaAsmar v. Phelps Dodge* to support his argument that Aetna's procedural errors in evaluating his claims require *de novo* review.  (ECF No. 119 at 4.) However, *LaAsmar* dealt not with errors in the evaluation of the claims, but rather with delays in issuing the decision.  605 F.3d at 796-800.  Those delays resulted in a finding that the insurer denied the plaintiffs' claims "substantially outside the time period within which the Plan vested it with discretion to interpret and apply the Plan.  Thus, it was not acting within the discretion provided by the Plan."  *Id.* at 799 (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003)[7]).  Because Plaintiff does not allege that

---

[7] *Gilbertson* held that:

> to be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion.  It follows that where the plan and applicable regulations place temporal limits on the administrator's discretion and the

the benefits decisions here were not timely issued, neither *LaAsmar* nor *Gilbertson*

apply directly to the instant case.  Further, Plaintiff has not argued that Aetna's alleged

failure to abide by ERISA notice requirements in its denial letters meant that it was not

acting within the discretion provided by the Plan.  The basis, therefore, for *de novo*

review in *LaAsmar* and *Gilbertson* is not present here.  Accordingly, the Court finds the

*Gilbertson* line of cases inapplicable to the instant case, and those cases do not compel

*de novo* review here.

Finally, Plaintiff argues that a conflict of interest was present in the evaluation of

Plaintiff's eligibility for benefits.  An inherent conflict of interest exists where the entity

evaluating eligibility for benefits and the entity paying those benefits are the same.

*Fought v. UNUM Life Ins. Co.*, 379 F.3d 997, 1006 (10th Cir. 2004), *abrogated on other*

*grounds by Glenn*, 554 U.S. 105; *see also Cirulis v. UNUM Corp. Severance Plan*, 321

F.3d 1010, 1017 n.6 (10th Cir. 2003).  The conflict arises from the Plan Administrator's

dual role as (1) a fiduciary, in which it may favor granting a borderline claim, and (2) an

---

administrator fails to render a final decision within those limits, the administrator's
'deemed denied' decision is by operation of law rather than the exercise of
discretion, and thus falls outside the *Firestone* exception.

328 F.3d at 631.  However, *Gilbertson* also held that where the administrator's decisionmaking indicated "substantial compliance" with ERISA, even a delayed decision may still merit deferential review.  *Id.* at 634-35.  *Gilbertson*'s holding has since been called into question due to intervening changes in the regulations applying to delayed, "deemed denied" decisions, and some courts have held that the automatic *de novo* review and "substantial compliance" cure no longer apply to delays constituting procedural violations.  *Compare Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1316 (10th Cir. 2009); *with Reeves v. Unum Life Ins. Co. of Am.*, 376 F. Supp. 2d 1285, 1294 (W.D. Okla. 2005).  However, the Court need not decide whether *Gilbertson* remains good law, because it is not applicable to the instant case.

administrator, in which its financial interest would counsel against granting borderline claims.  *See Glenn*, 554 U.S. at 111-12.

Where a conflict exists, the arbitrary and capricious standard still applies, *see id.*, but the reviewing court "must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict."  *Fought*, 379 F.3d at 1004 (quoting *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)).  Courts give greater weight to a conflict of interest "where circumstances suggest a higher likelihood that it affected the benefits decision," and give less weight to the conflict "where the administrator has taken active steps to reduce potential bias and to promote accuracy."  *Glenn*, 554 U.S. at 117.

In the instant case, the ULA Defendants have asserted—and Plaintiff has not contested—that although Aetna made eligibility decisions for both STD and LTD benefits, Aetna paid only the LTD benefits, while Boeing paid STD benefits directly. (ECF No. 130 at 15.)  Therefore, while a conflict exists with regard to the LTD benefits denial, no conflict exists with regard to the STD benefits.  Further, each time Aetna's letters denied Plaintiff's request for LTD benefits, they did so on the sole basis that the 26-week waiting period had not been met.  (*See* R. at AETNA000333, 354, 379.)  The Boeing Plan's LTD benefits require 26 weeks of prerequisite STD benefits; that is, Plaintiff must first merit and receive STD benefits for 26 weeks before he may be qualified for LTD benefits.  (*See* R. at AETNA000036.)  Because there is no conflict of interest with regard to the STD benefits, and the evidence shows that Plaintiff's LTD

16

benefits decision was based purely upon the denial of STD benefits, there is no allegation or evidence before the Court that Defendant's LTD denial decision was motivated or influenced by a conflict.  Therefore, the Court is not persuaded to apply a less deferential standard of review on the basis of any conflict of interest.

In sum, because Plaintiff has failed to show that the Court must review the denial of benefits *de novo*, the Court will follow *Firestone Tire* in applying an "arbitrary and capricious" standard of review.  489 U.S. at 115.

**B.      Analysis**

Plaintiff argues that the denial of his disability benefits was arbitrary and capricious because (1) Aetna ignored the uncontradicted medical evidence of Plaintiff's impairments and unreasonably required him to present objective evidence of his disabling pain; (2) Aetna inaccurately characterized Plaintiff's occupation and thus unreasonably found Plaintiff capable of performing his job duties; and (3) Aetna was biased against Plaintiff's claim and failed to follow ERISA notice requirements in denying him benefits.  (ECF No. 119 at 5-23.)  The Court will consider each of these arguments in turn.

1.      Objective Medical Evidence

In Aetna's denial letters, it stated that its reason for denying Plaintiff's claim was the lack of "clinical information," "documentation," and "clinical findings and test results" indicating that Plaintiff's condition was of disabling severity.  (*See* R. at AETNA000267, 323, 333-34, 350-51, 355, 378-79.)  Plaintiff argues that Aetna's denial of benefits

based upon the lack of objective evidence was arbitrary and capricious, because objective evidence cannot reasonably be required to support complaints of disabling pain.  (ECF No. 119 at 12-18.)  Plaintiff also contends that he did in fact present uncontradicted medical records that should have sufficed as objective evidence.  (*Id.*)

Plaintiff first argues that it was unreasonable for Aetna to require objective medical evidence of Plaintiff's disabling pain, because pain cannot be measured objectively.  (ECF No. 119 at 14-17.)  The Tenth Circuit has agreed that it is unreasonable for a plan administrator to require objective medical findings to prove the existence of a condition that is evidenced only by the subjective experience of pain.  In the case of an ailment such as fibromyalgia, for example, no objective tests exist.  Thus, "[b]ecause proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims."  *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (quotation omitted).

However, even in the extreme example of fibromyalgia, the Tenth Circuit has distinguished between the unreasonableness of requiring objective evidence to prove the condition, and the reasonable requirement of objective evidence to indicate its disabling severity, holding that a denial of benefits for failure to submit evidence of disability was not arbitrary and capricious.  *See, e.g.*, *Meraou v. Williams Co. Long Term Disability Plan*, 2007 WL 431515 at *6, *8 (10th Cir. 2007) ("For the most part the consultants did not state that Ms. Meraou needed objective evidence to document the *existence* of her medical conditions, already diagnosed by her doctors.  Objective

evidence, in their opinion, was necessary primarily to confirm the *disabling severity* of these conditions.") (emphasis in original).

The Court notes that Aetna's first two denial letters citing "missing clinical information" did not differentiate between evidence of Plaintiff's condition and its disabling severity. (*See* R. at AETNA000267, 323.) However, after Aetna received Plaintiff's medical records in November 2008, Aetna's subsequent denial letters specified that the denial decision was based upon "insufficient observable impairment in functioning (e.g. test results showing significant loss of functionality or deficits in performing activities of daily living, etc.) to demonstrate a [disabled] severity of impairment . . . ." (R. at AETNA000334.) This indicates that it was the extent to which Plaintiff's condition was disabling, and not the existence of the condition itself, for which Plaintiff had provided insufficient objective evidence. Accordingly, the Court need not determine whether Plaintiff's condition itself was demonstrable by objective evidence, because what Aetna requested was not evidence of the condition, but evidence of its disabling severity. Following the Tenth Circuit, the Court finds that such a request was not unreasonable.

In addition, the Court has reviewed the documentation Plaintiff submitted and finds that, although it confirms the existence of Plaintiff's impairment, it was reasonable for Aetna to require further documentation of its disabling severity. Defendants retained two separate orthopedic surgeons to review Plaintiff's records and other evidence. (R. at AETNA000334, 378.) The second consulting physician spoke to Nurse Walton,

Plaintiff's treating medical provider, for further information, and noted that the quantitative findings and diagnostics were insufficient to support Plaintiff's allegations of disability.  (R. at AETNA000378.)  Both consulting physicians' reports demonstrate that they carefully reviewed the medical records Plaintiff submitted, and concluded that those medical records did not support a determination that Plaintiff was disabled, as that term was defined in the Plan.  (R. at AETNA000338-41, 372-76.)

In the January 7, 2009 denial letter, Aetna relied upon the evaluation of the consulting orthopedic surgeon and found that, although Plaintiff had demonstrated that he had a medical condition requiring treatment, there was "a lack of information currently submitted to indicate that your condition causes your inability to perform the material functions of your occupation."  (R. at AETNA000334.)  The letter then asked Plaintiff to provide such information if he requested a review of the decision, specifically requesting a description of Plaintiff's "functional impairments and restrictions, with evidence to support those limitations," and "a detailed explanation of how the severity of your condition is documented . . . ."  (R. at AETNA000335.)  Plaintiff never produced medical opinions with the type of information Aetna requested.

Nevertheless, Plaintiff cites *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004), to support the argument that Aetna should have affirmatively sought information that could have satisfied its purported need for such objective, clinical findings and test results.  (ECF No. 119 at 18.)  In *Gaither*, the Tenth Circuit held that "fiduciaries cannot shut their eyes to readily available information when the evidence in

the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." 394 F.3d at 807.  However, the Tenth Circuit also made clear that its holding in *Gaither* was narrow, and it was not "suggest[ing] that the administrator must pore over the record for possible bases for disability that the claimant has not explicitly argued, or consider whether further inquiry might unearth additional evidence when the evidence in the record is sufficient to resolve the claim one way or the other."  *Id.*  Thus, *Gaither* does not require a plan administrator to actively investigate Plaintiff's claim to obtain objective evidence of its disabling severity.  Rather, the burden is on Plaintiff, as the claimant, to show that his condition impedes his ability to work sufficiently to disable him from performing his job.  *Id.*; (*see* R. at AETNA000191.)

Finally, Plaintiff argues that his MRI results sufficiently supported the severity of his claim.  (ECF No. 119 at 6-8.)  However, Plaintiff did not undergo an MRI until May 5, 2009, and did not submit the results to Aetna until July 7, 2009.  (R. at AETNA000401-15.)  By that time, Plaintiff had already received six letters of denial from Aetna, including three that were responsive to Plaintiff's submissions of additional information, and one, on April 13, 2009, that responded to Plaintiff's explicit request for review. (*See* R. at AETNA000333, 355, 377.)  It was not unreasonable for Aetna to deem its decision final after reviewing Plaintiff's claim six times and twice retaining orthopedic surgeons to review his claim, particularly where the benefits plans at issue do not grant multiple administrative appeals.  (*See* R. at AETNA000075, 165-67.)  The Tenth Circuit

has held that ERISA does not require a plan administrator to permit a claimant to receive and rebut medical opinion reports generated in the course of reviewing its initial decision, as such a holding "would set up an unnecessary cycle of submission, review, re-submission, and re-review.  This would undoubtedly prolong the appeal process . . . [and] would unnecessarily increase cost of appeals."  *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166-67 (10th Cir. 2007).  A similar result would occur here if the Court were to require claims reviews beyond what the Plans specify.

Furthermore, even if Aetna had performed a seventh review, there is no indication that the MRI results would have satisfied Aetna's request for medical evidence that Plaintiff's functional limitations were sufficient to disable him from working.  Indeed, Defendants note that, although Aetna did not perform a complete review of its decision after Plaintiff's belated submission of his MRI results, Aetna did consider the new documents internally, concluding that "though a diagnosis is present, the [claimant's] functional capacity indicates that he would have the capacity to perform his light duty occupation."  (ECF No. 130 at 13; R. at AETNA000599.)  Therefore, the Court cannot find that Aetna's failure to reverse its decision after the submission of Plaintiff's MRI results was unreasonable.

Thus, the Court finds that Aetna's requirement of objective evidence to prove that Plaintiff's condition was disabling was reasonable, and not arbitrary and capricious.

2.     Occupational Duties

Plaintiff next contends that Aetna's denial of his claim was unreasonable

because Aetna used the wrong occupational information when it determined that he was not disabled from working.  (ECF No. 119 at 18-23.)

The Boeing Plan's definition of "disabled" for the purposes of a STD application indicates that an impairment is of disabling severity where it "prevents you from performing the material duties of your own occupation or other appropriate work the Company makes available."  (R. at AETNA000191.)  Accordingly, the occupational duties of the claimant's particular job affect the definition of disability.

Plaintiff's Opening Brief cites the O*Net Report he submitted on July 7, 2009, which defines the duties and exertional requirements of a Safety Engineer, arguing that Aetna failed to consider all such duties and requirements in making its decision.  (ECF No. 119 at 20-22.)  However, the O*Net Report was not submitted during Aetna's administrative process; as with the MRI results, discussed above, it was submitted after Aetna had already reviewed and denied Plaintiff's claim six times.  (*See* R. at AETNA000401-15.)  Instead Aetna's review was conducted based upon Plaintiff's own reports of his occupational duties, including the list of duties Plaintiff initially submitted in January 2009.  (*See* R. at AETNA000349.)  Even if those duties were incomplete, it was not unreasonable for Aetna to utilize the information Plaintiff provided it in assessing his claim.

Furthermore, the Court's review is limited to the administrative record and the evidence before the decision-making entity.  *Flinders*, 491 F.3d at 1190.  The decision need only be supported by "substantial evidence" to be affirmed, where evidence

constituting "more than a scintilla but less than a preponderance" suffices. *Sandoval*, 967 F.2d at 382.  Given the evidence before Aetna regarding Plaintiff's occupation, the Court finds that substantial evidence supported Aetna's decision.  Accordingly, the Court finds that it was reasonable for Aetna to rely upon the evidence of Plaintiff's occupational duties as he described them.

3.     Notice Requirements and Bias

Plaintiff asserts that Aetna's denial letters failed to comply with ERISA's notice requirements, and that its decisionmaking exhibited bias against Plaintiff's claim "from the very beginning."  (ECF No. 119 at 8.)

ERISA requires plan administrators to follow a two-step procedure when they deny a claim.  *See* 29 U.S.C. § 1133.  First, they must provide to the applicant "adequate notice . . . setting forth the specific reasons for denial."  *Id.* § 1133(1). Second, the plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  *Id.* § 1133(2).  The "full and fair review" must give the claimant "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits."  *Id.*  This includes being informed of the evidence the decisionmaker relied upon, receiving "an opportunity to address the accuracy and reliability of the evidence, and having the decisionmaker consider the evidence presented by both parties prior to reaching and rendering his decision."  *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 893-94 (10th

Cir. 1988) (internal quotation marks omitted); *see also Benson v. Hartford Life & Acc. Ins. Co.*, 511 F. App'x 680, 685-87 (10th Cir. 2013) (quoting *Sage*).

Although Plaintiff's briefing is muddled and disorganized, it appears to argue that the decisionmaking was flawed at both steps, contending that Aetna's denial letters did not sufficiently explain its decisions, and did not provide Plaintiff sufficient time and information to comply with Aetna's requests.[8]   (ECF No. 119 at 5-10.)

First, the Court notes that the first two denial letters cited only missing clinical information as a basis for denial, and apart from requesting an Attending Physician Statement, the letters did not explain what information was missing or why such information was necessary.  (*See* R. at AETNA000267, 323.)  As Plaintiff argues, each of the first two letters also allowed him only four days to respond with supporting documentation.  (*Id.*)  However, the following four denial letters each described in detail the documentation reviewed, the evaluation of the consulting orthopedic surgeons, and the type of information found lacking, citing the Plan's definition of disability in support of the decision.  (*See* R. at AETNA000335, 350, 354, 378.)  Thus, even if the first two letters were discounted for failure to sufficiently explain the reasons for the denial, Aetna subsequently provided four letters providing notice of the reasons for its denial,

---

[8] In Plaintiff's Reply, for the first time he raises the argument that the denial letters failed to comply with ERISA in that they did not reference the specific plan provisions upon which the denial was based, did not describe the additional material required, and did not explain why such material was necessary in violation of 29 CFR § 2560.503-1(g).  (ECF No. 134 at 8.)  The Court will not consider arguments raised for the first time in a reply brief; such tactics sandbag the opposing party and prevent the argument from being fully briefed.  *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir. 1993).

and multiple opportunities for submission of additional information and subsequent review.  Therefore, the Court finds that Aetna's decisions provided sufficient initial notice of the reasons for denial.

Second, even assuming that the brevity of Aetna's first two letters was error, Plaintiff was provided a "full and fair" opportunity to address the evidence Aetna relied upon.  Every one of Aetna's letters clearly and directly stated that its decision was based on a lack of clinical findings and/or objective medical evidence, and three of the letters specified the type of evidence that could rebut Aetna's decision on review.  (*See* R. at AETNA000335, 353, 355, 379.)  Nevertheless, Plaintiff failed to provide any such evidence, submitting his MRI results and O*Net Report only after he had already received multiple opportunities for review.  (R. at AETNA000401-15.)  As discussed above, neither ERISA nor the applicable Plans require a second, let alone a third, opportunity for review.  (*See* R. at AETNA000075, 165-67.)  Accordingly, the Court finds that Plaintiff received a full and fair opportunity for administrative review, and Aetna's failure to evaluate Plaintiff's newly submitted evidence after its April 13, 2009 denial was not arbitrary or capricious.

Finally, the Court rejects Plaintiff's argument that Aetna's repeated denial of his claims exhibited bias.  (ECF No. 119 at 8.)  As discussed above, Aetna's denials were reasonable and not arbitrary or capricious, and apart from receiving repeated denials with short timeframes for response, Plaintiff points to no other evidence exhibiting bias.

Rather, Plaintiff's bias argument is no more than a baseless assertion, containing no citation to case law, specific factual allegations, or any other support.  (*See id.*)

In conclusion, the Court finds that Aetna's denial of benefits to Plaintiff was reasonable and not arbitrary or capricious, and the Court therefore affirms the denial of benefits.

### III.  MOTION FOR SUMMARY JUDGMENT: CLAIMS TWO, THREE, & FOUR

The ULA Defendants' Motion for Summary Judgment ("Motion") asserts that they are entitled to judgment as a matter of law on Plaintiff's claim for penalties for failure to provide copies of the Summary Plan Description (Claim Two), request for reformation of the Plan (Claim Three), and claim for breach of fiduciary duty (Claim Four).  (ECF No. 118 at 8-24.)

### A.    Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing a motion for summary judgment, a court must view the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to adjudication on the merits.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.    Analysis**

The ULA Defendants' Motion argues that Plaintiff's Claims Two, Three, and Four all fail as a matter of law.  The Court will discuss each claim below.

1.    <u>Penalties Claim</u>

Plaintiff's Amended Complaint asserts that on multiple occasions, he requested copies of documents to which he was entitled under ERISA, and that the ULA Defendants failed to provide those documents.  (Am. Compl. ¶¶ 58-63.)  ERISA requires the plan administrator to provide to a plan participant, upon written request, a copy of "the latest summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  Failure to provide such documents subjects the plan administrator to monetary penalties under 29 U.S.C. § 1132(c)(1).  *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).[9]

---

[9] Although the enforcement provision, § 1132(c)(1), does not explicitly cover enforcement of § 1024(b)(4), the Tenth Circuit in *Moothart* clarified that "Section 1132(c)(1) is the penalty provision applicable where the court finds a violation of § 1024."  21 F.3d at 1503.

In their Motion, the ULA Defendants make several arguments against Plaintiff's penalties claim applying to each of Plaintiff's requests for documents.  (ECF No. 118 at 8-15.)  The evidence shows that Plaintiff requested copies of documents related to his claim on March 17, 2009, July 7, 2009, November 29, 2010, and January 26, 2012. The Court will discuss each request in turn.

        a.     *March 17, 2009 and July 7, 2009*

The ULA Defendants make three arguments that Plaintiff's March 17, 2009 and July 7, 2009 requests for documents do not subject them to liability: (1) Plaintiff's claim for penalties based upon these requests fails because the statute of limitations has run; (2) the requests were not sent to ULA, and ULA had no notice of them; and (3) the March 17, 2009 request did not sufficiently specify the documents that trigger penalties under 29 U.S.C. § 1132(c)(1).  (ECF No. 118 at 10-11.)

First, the Motion contends that the applicable statute of limitations for a claim under § 1132(c)  is the Colorado one-year statute.  (*Id.* at 11.)  In Response, Plaintiff argues that the California three-year statue applies, and therefore his claim for penalties based upon these requests was timely.  (ECF No. 128 at 15-16.)

Section 1132(c) does not contain a statute of limitations.  Thus, "[i]n these circumstances, the court applies the most analogous state statute of limitations." *Adams v. Cyprus Amax Mineral Co.*, 44 F. Supp. 2d 1126, 1138 (D. Colo. 1999) (citing *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990)).  In *Held*, the Tenth Circuit selected the New York statute it found most analogous to § 1132, despite

the fact that the forum state was Colorado, because "New York has the most significant relationship to the claim in this case." *Held*, 912 F.2d at 1203.  New York's relationship to the claim was deemed more significant because the employer's headquarters, principal place of business, maintenance of personnel records, and decisionmaking regarding the plaintiff's claim were made there, while Colorado was only the plaintiff's domicile and had "no substantial interest in [the plaintiff's] claim." *Id.*

In *Adams*, this District Court relied on *Held* in similarly evaluating the significance of a state's relationship with a § 1132 claim.  44 F. Supp. 2d at 1138-39 (finding that "unlike in *Held*, Plaintiffs are not only domiciled in Colorado, but their employment was in Colorado, as was their receipt of communications from Defendants in New York."). After determining that Colorado had the most significant relationship, the *Adams* Court found that the most analogous Colorado statute to a § 1132(c) claim was Colorado Revised Statute § 13-80-103(1)(d), a civil penalty statute with a one-year limitations period.  *Id.* at 1140 (following *Damon v. Unisys Corp.*, 841 F. Supp. 1094, 1098 (D. Colo. 1994) (concluding same)).

Plaintiff's Response argues that *Adams* compels a finding that the statute of limitations should be taken from an analogous statute in the state where the employment was based.  (ECF No. 128 at 16.)  However, Plaintiff's brief makes no argument regarding the significance of the relationship with the claim.  (*See id.*)  Rather, Plaintiff simply states that because he was working in California when he became disabled, a California statute of limitations should apply.  (*Id.*)  The ULA Defendants

30

reply that Colorado has the most significant relationship with the claim under *Held*, because the relevant claim is not Plaintiff's application for benefits, but rather the claim for penalties under § 1132.  (ECF No. 132 at 13.)  The penalties claim is intended to compensate Plaintiff for the ULA Defendants' alleged failure to provide documents upon request, and Plaintiff's requests for documents were all made from Colorado, as were his receipt of the ULA Defendants' allegedly deficient communications.  (*Id.* at 13-14.)  In contrast, California has no relationship to the penalties claim.  (*Id.* at 14.)

The Court agrees with the ULA Defendants that Colorado has the most significant relationship to Plaintiff's penalties claim under § 1132.  Although Plaintiff's employment was in California, his communications with Defendants and with Aetna were all made from, and received in, Colorado, and California had no contact with or relationship to the penalties claim.  The Court finds Colorado Revised Statute § 13-80-103(1)(d) most analogous to a claim under § 1132.  *See Damon*, 841 F. Supp. at 1098; *Adams*, 44 F. Supp. 2d at 1140.  Therefore, a one-year statute of limitations applies to Plaintiff's penalties claim.  Plaintiff's Complaint was filed on February 17, 2011, ten months after the expiration of the limitations period for the March 17, 2009 request, and more than six months after its expiration for the July 7, 2009 request.  (*See* ECF No. 1.)  Plaintiff's claims under § 1132 for those two requests are therefore untimely.

Because the statute of limitations bars Plaintiff's penalties claim for his March 17, 2009 and July 7, 2009 requests, the Court need not discuss the ULA Defendants' other

arguments regarding those requests.  Accordingly, the Motion is granted with regard to Plaintiff's March 17, 2009 and July 7, 2009 requests in Plaintiff's Claim Two.

b.    *November 29, 2010*

The Motion argues that no penalties apply to Plaintiff's request for documents on November 29, 2010, because ULA complied with Plaintiff's requests and sent Plaintiff copies of the documents he requested.  (ECF No. 118 at 13.)  Plaintiff argues in his Response that ULA failed to properly respond to his November 29, 2010 request for "copies of both Short Term and Long Term Disability Plans (2007-2008)," because ULA sent him the Summary Plan Description for the Boeing Plan, when Plaintiff was an employee of ULA.  (ECF No. 128 at 18.)  Because the language of the Boeing Plan states that it applies to employees of Boeing, Plaintiff argues that ULA did not send him the correct Summary Plan Description, and therefore did not properly respond to his request.  (*Id.*)

The evidence shows, and Plaintiff does not dispute, that he requested the STD and LTD information for 2007 to 2008 that applied to his claim, and that the ULA Defendants responded by sending him the Summary Plan Description for the Boeing Plan.  In Plaintiff's Amended Complaint, he asserts that the Boeing Plan and the ULA Plan "are actually intended to identify just one Plan," and Plaintiff thereafter refers to both Plans jointly as "the Plan."  (Am. Compl. ¶ 4.)  Further, Plaintiff testified in his deposition that in moving from Boeing to ULA employment, he understood that his

32

benefits would stay the same and would be managed by Boeing during the transition period, from December 1, 2006 to December 1, 2008. (*Id.* at Ex. B pp. 22-23.)

Given this understanding, the Court finds it disingenuous for Plaintiff to claim that ULA failed to properly respond to his request because it sent him documents related to the Boeing Plan. Both parties agree that the Boeing Plan applied to Plaintiff during the relevant time; therefore, there is no dispute of fact as to whether ULA responded to Plaintiff's November 29, 2010 request with information applicable to his claim. Accordingly, no penalties apply, and summary judgment is appropriate with respect to Plaintiff's November 29, 2010 request under Plaintiff's Claim Two.

c.   *January 26, 2012*

Finally, the Motion contends that the ULA Defendants complied with Plaintiff's requests for documents in the subpoena dated January 26, 2012, and thus are not subject to penalties under § 1132. (ECF No. 118 at 12.) Plaintiff states in his Response that "[i]t is undisputed that the ULA Committee responded to undersigned Counsel's subpoena with the same Boeing [Summary Plan Description] it provided in the past," but argues that there is a dispute of fact as to whether the Boeing Plan applied to Plaintiff. (ECF No. 128 at 16-17.)

Again, the Court finds Plaintiff's argument self-defeating where his Amended Complaint asserts that the Boeing Plan and the ULA Plan were functionally a single plan, and where Plaintiff admits he understood that the Boeing Plan applied to him during the relevant time period. For the same reasons as the November 29, 2010

request, the Motion is granted insofar as it pertains to Plaintiff's request for penalties resulting from the January 26, 2012 subpoena.

In sum, the Court finds that there is no genuine dispute of material fact regarding Plaintiff's claim for penalties under § 1132.  Therefore, the ULA Defendants' Motion is granted as to Plaintiff's Claim Two.

2.      Fiduciary Duty and Reformation Claims

The ULA Defendants next argue that summary judgment is appropriate on Plaintiff's claim for a breach of fiduciary duty, because such claims against a plan administrator are only available as equitable claims for losses to the plan, not for compensatory claims for losses to a plan beneficiary.  (ECF No. 118 at 15-20.)  The ULA Defendants also assert that Plaintiff's claim for reformation of the contract fails because the remedy of reformation is available only for fraud or mutual mistake, neither of which are alleged here.  (*Id.* at 23-24.)

The Court need not evaluate the merits of the ULA Defendants' remaining arguments, because both claims are disposed of by the Court's previous rulings. Plaintiff's Claim Three argues that Plaintiff should have been awarded benefits, and the Plan should be reformed to provide those benefits.  (Am. Compl. ¶ 67.)  Having found in Part II that the denial of benefits to Plaintiff was reasonable, the Court must conclude that no reformation of the Plan is required.  Similarly, Plaintiff's Claim Four argues that the plan administrator breached its fiduciary duty by failing to provide accurate information in the Summary Plan Description to Plaintiff, delaying the receipt of his

benefits, and increasing his costs.  (Am. Compl. ¶¶ 69-74.)  In the above discussion of

Plaintiff's Claim Two, the Court found that the ULA Defendants did not violate ERISA by

failing to provide documents to Plaintiff.  *See* Part III.B.1.  Thus, despite taking all facts

in the light most favorable to Plaintiff, he has raised no dispute of material fact

regarding whether the ULA Defendants failed to provide him with the documents he

requested or whether he was entitled to benefits, nor has he made any other argument

that permits a finding that the ULA Defendants violated their fiduciary duty.

Accordingly, the Court finds that Plaintiff's claims for a breach of fiduciary duty

and request for reformation of the contract fail as a matter of law, and summary

judgment is also appropriate with regard to Claims Three and Four.  Thus, the ULA

Defendants' Motion for Summary Judgment must be granted in its entirety.

## IV.  MOTION TO STRIKE

During the briefing on the Motion for Summary Judgment, the ULA Defendants

filed a Motion to Strike the exhibits to Plaintiff's Response, arguing that after Plaintiff

requested and was granted a two-day extension of time to file his Response because

he had technical difficulties uploading the supporting exhibits, said exhibits were not in

fact filed until two days after the extended deadline.  (ECF No. 133 at 2.)  The Court

ordinarily requires strict compliance with filing deadlines and does not permit extensions

of time absent a timely-filed motion seeking such an extension.  *See* WJM Revised

Practice Standard II.D.  However, in the instant case, the Court has reviewed the

exhibits at issue, and finds that the majority of the documents comprising the late-filed

exhibits are already before the Court as part of the Record or in other filings.

(*Compare, e.g.*, ECF No. 129 *with* R. at AETNA000084-196; ECF No. 129-1 *with* ECF

No. 118 Ex. C; ECF No. 129-2 *with* R. at AETNA000357-59.)  Furthermore, those few

documents which are not already part of the Record have no persuasive value with

respect to the Court's findings discussed above.

Thus, because the contested filing has no effect on the Court's analysis

regardless of whether it is stricken, the Motion to Strike is denied as moot.

## V.  CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED THAT:

1. The parties' Joint Motion for Determination (ECF No. 135) of Plaintiff's Claim
   One is GRANTED and the denial of benefits is AFFIRMED;

2. The ULA Defendants' Motion for Summary Judgment (ECF No. 118) on
   Plaintiff's Claims Two, Three, and Four is GRANTED;

3. The ULA Defendants' Motion to Strike (ECF No. 133) is DENIED AS MOOT; and

4. The Clerk shall enter judgment in favor of Defendants on all claims.  Defendants
   shall have their costs.

Dated this 31st day of July, 2013.

BY THE COURT:

William J. Martínez
United States District Judge